**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LESLIE MOLLETT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 09-1192** |
| | ) | **Magistrate Judge Maureen P. Kelly** |
| **LEITH, Captin; RUSTIN, Warden;** | ) | |
| **EMRICK, Deputy; BOHN, Deputy;** | ) | **ECF No. 34** |
| **DONIS, Mrj.; FLOOD,** | ) | |
| **Defendants.** | ) | |

**OPINION**

**KELLY, Magistrate Judge**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 34.  Defendants seek to

dismiss the *pro se* action filed by Plaintiff Leslie Mollett ("Plaintiff" or "Mollett"), which alleges claims

pursuant to 42 U.S.C. § 1983, on the grounds that the Defendants violated his rights under the First,

Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution while he was

incarcerated as a pre-trial detainee at the Allegheny County Jail. For the reasons set forth herein,

Defendants' Motion to Dismiss is granted.

I.      **STANDARD OF REVIEW**

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321

(1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an

effort to curb the increasing number of often frivolous and harassing lawsuits brought by persons

in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA

significantly amended the statutory provisions with respect to actions brought by prisoners who

are proceeding in forma pauperis ("IFP"). The amended statute provides that "[n]otwithstanding

any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that: (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In the case at issue, Plaintiff has been granted IFP status, and is a prisoner within the meaning of 28 U.S.C. § 1915.[1] Thus, Section 1915(e)(2) is applicable. In applying the PLRA, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e). See, e.g., Keener v. Pennsylvania Board of Probation and Parole, 128 F.3d 143, 145 n. 2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In performing the court's mandated function of review of complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court must apply the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1997) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates

---

[1] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."), aff'd, 116 F.3d 473 (Table) (4th Cir. 1997).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). Dismissal is proper under Rule 12(b)(6), and hence, under Section 1915(e), where the court determines that the facts alleged, taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Furthermore, because Plaintiff is *pro se*, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519 (1972).

 A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. In order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989).

With regard to certain of the allegations made by Plaintiff in this case, it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters of which the court may take judicial notice. Commonwealth Edison Co. v. United States, 46 Fed. Cl. 158, 160 n. 3 (Fed. Cl.  2000), aff'd, 271 F.3d 1327 (Fed. Cir. 2001).

In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n. 2 (3d Cir.1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir.1990); see also Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept.3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under § 1915A."). A court may also take judicial notice of the docket in Plaintiff's underlying criminal trial. See In re Congoleum Corp., 426 F.3d 675, 678 n. 2 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant here."); Furnari v. Warden, Allenwood Federal Correctional Inst., 218 F.3d 250, 255 (3d Cir. 2000).

Further, the United States Court of Appeals for the Third Circuit has held that a court may, in certain circumstances, also take judicial notice of information "in the public realm," such as news reports, relating to a particular issue in a case.

We review the District Court's decision to take judicial notice of certain facts for abuse of discretion. *NAHC,* 306 F.3d at 1323. We see no basis to upset the District Court's decision to take judicial notice of newspaper articles supplied by appellees. The inquiry notice analysis is an objective one. Whether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true. *Cf. In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 289 F.Supp.2d 416, 425 n. 15 (S.D.N.Y. 2003) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment."). Their publication is "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b)(2); *see Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 n. 18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information

contained in news articles submitted by the defendants.").

Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management L.P., 435 F.3d 396,

401 (3d Cir. 2006).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

All of the incidents underlying Plaintiff's Section 1983 claims against the Defendants

relate to his alleged mistreatment while incarcerated at the Allegheny County Jail awaiting trial

and sentencing for the shooting death of Corporal Joseph R. Pokorny, Jr., a Pennsylvania State

Trooper. See, Commonwealth v. Mollett, 5 A.3d 291 (Pa. Super. 2010), *appeal den.,* 14 A.3d

826 (Pa. 2011); and see CCP Allegheny County, Pennsylvania (CP-02-CR-0000254-2006) at

http://ujsportal.pacourt.us.[2]

Plaintiff alleges that his constitutional rights were violated when: (1) he wrote a letter to

jail staff expressing concern that published news articles regarding the distribution of a list of

"jailhouse snitches" was "directed at him" and, as a result, he was placed in "the R.H.U." or

"solitary confinement" without a hearing;  (2) he was denied telephone and personal visitation

with his attorney; (3) he was denied family visitation with his mother and with one of his

girlfriends; (4) he was denied medical treatment for an unspecified illness; and (5) his personal

property and legal materials were destroyed. For each of the violations, Plaintiff seeks injunctive

and declaratory relief as well as monetary damages.

Defendants' Motion to Dismiss is predicated upon the application of the statute of

limitations; the bar of certain of Plaintiff's claims pursuant to Heck v. Humphrey, 512 U.S. 477

(1994); Plaintiff's failure to allege facts establishing the personal involvement of each of the

Defendants in the violation of Plaintiff's rights; Plaintiff's failure to state a claim against any of

---

[2] Plaintiff's Amended Complaint does not set forth the charges for which he was awaiting trial. However, Plaintiff's charges and conviction in the Court of Common Pleas of Allegheny County are a matter of public record.

the Defendants for which relief may be granted; and the unavailability of declaratory or

injunctive relief inasmuch as Plaintiff is no longer incarcerated at the Allegheny County Jail.

ECF No. 34. Plaintiff has filed a brief in response to the Motion to Dismiss. ECF No. 38.

## III.   **DISCUSSION**

### A.   By operation of the "Prisoner Mailbox Rule," the applicable statute of limitations does not bar Plaintiff's claims regarding housing and visitation.

Section 1983 does not contain its own statute of limitations.  However, it is well

established that the federal courts look to the relevant state statute of limitations for personal

injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of

Philadelphia, 142 F.3d 582 (3d Cir. 1998).  In this regard, federal courts sitting in Pennsylvania

have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.

Cons. Stat. § 5524 in determining that a Section 1983 claim must be filed no later than two years

from the date the cause of action accrued.  See Lave v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000);

Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996).  Furthermore, a claim

under Section 1983 accrues when the plaintiff "knew or should have known of the injury upon

which  his  claim is based."  Sameric, 142 F.3d 599.

Here, the Amended Complaint makes apparent that on August 31, 2007, Plaintiff was

aware of his claim regarding his purported improper placement in a restricted housing unit at the

Allegheny County Jail without a hearing.  As alleged by Plaintiff, while being escorted to

"solitary confinement cell 8-e,"

> (3) … Plaintiff asked Lt. Leon why he was being held/placed in solitary
> confinement and received no response…. On 08-31-2007, plaintiff filed a written
> complaint to Sgt Dickey asking why he was being unlawfully housed in solitary
> confinement.

　　　　(4)  On 08-31-07, plaintiff filed a written complaint to Sgt. Dickey asking why he
　　　　was being unlawfully housed in solitary confinement.

ECF No. 14, p.1.  Plaintiff was sufficiently cognizant of his alleged unlawful housing to file a

written complaint on August 31, 2007; however, he waited two years, until August 25, 2009, or

August 27, 2009, (the apparent date of mailing as appears on the envelope postmark) to deliver

his Complaint and petition to proceed *in forma pauperis* to appropriate prison officials for

mailing to the Court for docketing.  ECF No. 8, p.4.  Because the documents were not received

by the Clerk for the United States District Court for the Western District of Pennsylvania until

September 2, 2009, Defendants have raised the applicable statute of limitations as a bar to

Plaintiff's housing claims.[3]

　　　　Plaintiff, however, is entitled to the benefit of the "prisoner mailbox rule," first

articulated by the United States Supreme Court in Houston v. Lack, 487 U.S. 266, 275-76, 108 S.

Ct. 2379, 101 L. Ed. 2d 245 (1988), which renders timely his initial complaint and the claims set

forth therein.   In Houston, the Supreme Court applied Federal Rule of Appellate Procedure

4(a)(1), requiring appeals to be filed within thirty days. The Court held that a pro se prisoner's

notice of appeal in a habeas corpus case was filed at the moment it was delivered to prison

authorities for forwarding to the district court. Houston, 487 U.S. at 270, 108 S. Ct. at 2382

(citing Fallen v. United States, 378 U.S. 139, 84 S. Ct. 1689, 12 L. Ed. 2d 760 (1964)). First

pointing out that Federal Rule of Appellate Procedure 4(a)(1) did not define when "filing"

occurs, the Supreme Court went on to examine the unique circumstances confronting a prisoner

proceeding pro se. Id., 487 U.S. at 273, 108 S. Ct. at 2383.  It noted among them, a pro se

prisoner's inability to take the steps other litigants can to monitor the processing of a notice of

appeal and ensure that the clerk receives and stamps it within the appeal period. Id. at 270-71,

---

[3] It is noted that the cases cited by Defendants on this point have either been overruled or have no relevance to the
issue presented.

108 S. Ct. at 2382-83. The Supreme Court also pointed out that a pro se prisoner does not have counsel to see that such notice is timely received by the clerk. Id. at 271, 108 S. Ct. at 2382. Thus, pro se prisoners who must use the mails to file documents and cannot personally travel to the clerk's office to do so are unlike other civil litigants who choose the mail for filing and must bear the risk of late delivery that is attendant on the means of filing he has chosen to use. Id. The Supreme Court then pointed out if there is a delay attributable to prison authorities rather than postal procedures, a prisoner is unlikely to be able to prove that the late filing resulted from the prison's delay in depositing the appeal in the mail or the clerk's failure to properly stamp the notice when it is received. Id.

In addition, the Court reasoned that its rejection of a mail box rule in other situations, because of the difficulty in determining the time of deposit, does not apply to a prisoner because prison authorities are in a position to easily show when a document was received or mailed under established prison procedures for recording the date and time at which papers are received by prison officials in the prison's mail room. Id. at 275, 108 S. Ct. at 2384. The Supreme Court created "a bright-line rule, not an uncertain one," by holding that "the notice of appeal was filed at the time  the habeas  petitioner delivered it to the prison authorities for forwarding to the court clerk." Id. at 276, 108 S. Ct. at 2385.

The United States Court of Appeals for the Third Circuit has extended this rule beyond the appeal of habeas petitions to comparable prisoner appeals, where filing deadlines have been between ten and thirty days. See, e.g., In re Flanagan, 999 F.2d 753 (3d Cir. 1993)(prisoner bankruptcy appeal); Paluch v. Secretary Pennsylvania Dept. of Corrections, No. 10-1645, 2011 WL 3652418 (3d Cir. 2011)(motion for reconsideration).  However, the Court of Appeals has not addressed, in a published opinion, the applicability of the prisoner mailbox rule to the initial

filing of Section 1983 civil rights actions, where a potential plaintiff has two years from the date

of injury to file his initial complaint and/or petition to proceed *in forma pauperis*. However, the

Court of Appeals, in <u>Santos v. Gainey</u>, 417 F. App'x 109 (3d Cir. 2010), recently held that where

a prisoner had two years to file a civil rights action, but delayed until six days prior to the

expiration of the statute of limitations to forward his *in forma pauperis* application, he was not

entitled to equitable tolling and the statute of limitations barred his complaint.

> Only if the plaintiff is prevented from asserting his claims in some extraordinary
> way is tolling permitted. Santos did not explain why he waited almost two years
> before initiating the process at the prison for completing the in forma pauperis
> application and we therefore conclude that he did not exercise the required
> diligence in pursuing his claim.

<u>Id.</u>, at 111. As an unpublished opinion, <u>Santos</u> is nonbinding and appears to have been limited

to the facts presented to the Court. The weight of authority, granting the benefit of the prisoner

mailbox rule to civil rights actions, would appear to benefit Plaintiff and render timely his claims

regarding housing, destruction of property and limited visitation. <u>See</u>, <u>e.g.</u>, <u>Smith v.</u>

<u>Pennsylvania Dept. of Corrections</u>, No. 10-22E, 2011 WL 4573364, *13 (W.D. Pa. September

30, 2011), <u>Reigle v. Reish</u>, No. 11-52, 2011 WL 4625644 (M.D. Pa. September 30, 2011).

Accordingly, without prejudice to raise the defense of the statute of limitations again should the

Court of Appeals revisit the <u>Santos</u> decision and affirm its holding, Defendants' Motion to

Dismiss those claims asserted in the original Complaint on the basis of the statute of limitations

is denied.

> **B. Plaintiff's claims alleging the lack of medical treatment are barred by the
> applicable statute of limitations as they do not "relate back" to the filing of
> the original Complaint.**

In his Amended Complaint, Plaintiff for the first time alleged that his Eighth Amendment

rights were violated when he sent a complaint to Deputy Bohn on December 10, 2008, "due to

being denied medical treatment."   ECF No. 14, pp. 3, 4.  This claim was raised on April 1, 2010,

some two years and four months after Plaintiff was allegedly denied medical treatment.  Thus,

unless this particular claim "relates back" to the original Complaint, deemed filed on August 27,

2009, the claim is barred by the applicable statute of limitations.

Rule 15(c) allows an amendment to relate back to the date of the original complaint when

"the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P.

15(c)(1)(B). The purpose of Rule 15(c) is "to ameliorate the effect of the statute of limitations in

instances where the opposing party has notice of the suit, but the amending party had failed to

assert all possible claims or defenses arising out of the conduct, transaction or occurrences set

forth in the original pleading." See Doe v. O'Bannon, 91 F.R.D. 442, 447 (E.D. Pa.1981).  "If the

amendment adds new legal theories of recovery based on the exact same facts as the original

pleading, then the amendment clearly relates back." Farber v. Gen Elec. Co, No. 93-2349, 1994

WL 46519, at *3 (E.D. Pa. Feb.16, 1994) ( citing Donnelly v. Yellow Freight Sys., Inc., 874 F.2d

402, 410 (7th Cir.1989)). "The factual elements need not be exactly the same, but the likelihood

of relation back decreases as the substance of the amended claims become increasingly distant

from the claims of the original complaint." Id. "In essence, application of Rule 15(c) involves a

search for a common core of operative facts in the two pleadings." Bensel v. Allied Pilots Ass'n,

387 F.3d 298, 310 (3d Cir. 2004). In deciding whether a particular amendment relates back to the

original complaint, "the court looks to whether the opposing party has had fair notice of the

general fact situation and legal theory upon which the amending party proceeds." Id.

Here, the original Complaint alleged only the violation of Plaintiff's rights with regard to

housing, attorney and family visitation and the destruction of legal materials necessary for the

preparation of his defense in the underlying criminal proceedings. The original Complaint did not make reference to any alleged deprivation with regard to medical treatment or to any serious physical or mental illness or disability which was not treated. Accordingly, Defendants were not on notice of any facts with regard to Plaintiff's medical condition. Because Plaintiff brings a new claim based on factual allegations not included in the original complaint, the amendment does not relate back to the original complaint. See, e.g., Burgos v. Philadelphia Prison Health Sys., No. 08-1179, 2009 WL 2710240, at *2 n. 5 (E.D. Pa. Aug.26, 2009) (finding that an amendment does not relate back where, in his original complaint, the plaintiff alleged that prison officials were deliberately indifferent to his constitutional rights and, in his amended complaint, alleged that hospital personnel acted in deliberate indifference). Plaintiff's claim as to the alleged denial of medical treatment, therefore, is barred by the applicable statute of limitations and dismissed with prejudice.

### C.   Plaintiff's claims regarding the destruction of legal materials, attorney visitation and witness contacts are barred by *Heck v. Humphrey*.

Plaintiff's claims against the Defendants, which are tantamount to allegations of the denial of access to counsel and interference with his ability to defend himself in his underlying criminal proceeding, are barred by the rule announced in Heck v. Humphrey, 512 U.S. 477 (1994). Heck prevents an indirect attack on the validity of a conviction via a civil rights suit unless the conviction, has, in effect, been overturned. In Heck, a state prisoner convicted of voluntary manslaughter brought a civil rights action against prosecutors and a police investigator, asserting that the defendants, acting under color of state law had engaged in an unlawful, unreasonable and arbitrary investigation, leading to Heck's arrest. Heck alleged that defendants had knowingly destroyed evidence that could have proven his innocence and caused

an illegal voice identification procedure to be used at his state trial. <u>Heck</u>, 512 U.S. at 479. The

United States Supreme Court rebuffed such an effort and held:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff
> must prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized to
> make such determination, or called into question by a federal court's issuance of a
> writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not been so invalidated is not
> cognizable under § 1983.

<u>Id.</u>, at 486-87 (footnote omitted).

Turning to the instant action, if Plaintiff were successful with regard to his claims that

during the preparation and course of his underlying criminal proceedings, the Defendants failed

to permit access to counsel and/or witnesses or destroyed or took legal materials pertinent to his

criminal trial, then Plaintiff's conviction for murder would necessarily be called into question.[4]

Thus, in <u>Valdez v. Rosenbaum</u>, 302 F.3d 1039, 1049 (9th Cir. 2002), the United States Court of

Appeals for the Ninth Circuit ruled that a pre-trial detainee's Sixth Amendment claim, alleging

interference with his right to communicate with counsel was barred by <u>Heck</u>.  In particular, the

plaintiff alleged that a requirement that he obtain permission to telephone his attorney rendered it

"impossible" to communicate with his counsel.  The Court found that because the claim "would

necessarily imply the invalidity of Valdez's subsequent conviction," it was barred by <u>Heck</u> and

should have been asserted in a petition for writ of habeas corpus on Sixth Amendment grounds.

---

[4] Indeed, Plaintiff's summary of his claims directly challenges the validity of his underlying conviction:

> In the Amended Complaint, Plaintiff alleged numerous allegations that the Defendants: denied
> him access to his attorney, denied him access to telephone calls to his attorney, and confiscated
> and destroyed important legal materials.  All the actions of the Defendants were done while
> Plaintiff was actively defending a potentially capital case.

Plaintiff's Response in Opposition to Motion to Dismiss, ECF No. 39, p. 11.

Id. at 1049.  See, also, Gray v. Rustin, No. 10-3888, 2011 WL 4342643 *2 (3d Cir. 2011) (claim

that pretrial incarceration interfered with ability to prepare a defense in criminal case necessarily

implicated the validity of conviction and is "therefore barred by the 'favorable termination rule"

of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)); and see, Shakur v. Coelho, 421 F. App'x

132, 135 (3d Cir. 2011)("[t]o the extent  plaintiff  argues that the seizure  of his legal materials

impeded his ability to defend his criminal case, we agree with the District Court that his remedy,

if any, lies in a habeas petition, not a civil rights action").

Plaintiff's challenge to the restrictions placed upon his ability to contact or visit his

attorney and/or witnesses throughout his period of detention in the Allegheny County Jail, as

well as his claim that legal materials were confiscated or destroyed, necessarily implicate the

validity of his underlying sentence.   Accordingly, his claims on these grounds are barred by

Heck and are dismissed with prejudice.

### D.  Plaintiff's claims as to conditions of confinement as a pre-trial detainee fail to state a claim.

Plaintiff's Amended Complaint sets forth several claims relating to the conditions of his

confinement as a pre-trial detainee for the four months leading up to his trial and sentencing.  For

the reasons set forth herein, Plaintiff fails to state claims upon which relief may be granted.

Plaintiff complains of his housing in "solitary confinement" without a disciplinary hearing and

also alleges that his ability to freely visit or contact counsel, witnesses and family members at

will was impeded. As a pre-trial detainee, Plaintiff's claims invoke the First Amendment as well

as the procedural and substantive due process protections of the Fourteenth Amendment. Bell v.

Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).[5]

---

[5] Plaintiff is correct that Defendants' reliance upon Sandin v. O'Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) as the basis for their Motion to Dismiss these claims is plainly erroneous.  Over a decade ago, the Court of Appeals for the Third Circuit held that Sandin does not apply to pre-trial detainees.  See, Fuentes v.

In considering Plaintiff's claims arising under the Due Process Clause, "the proper inquiry is whether the challenged  conditions amount to punishment of the detainee, for "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id. at 535 (citations omitted).

In Bell, the United States Supreme Court announced the following test for determining whether the conditions of confinement for pre-trial detainees violated the Fourteenth Amendment.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Bell v. Wolfish, 441 U.S. at 538-539 (internal quotations and citations omitted).  The Court of Appeals for the Third Circuit reviewed this standard in Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005). In Hubbard, the Court of Appeals acknowledged that Bell required the courts to engage in a two-step analysis:

> [W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes

Wagner, 206 F.3d 335, 342 n.9 (3d Cir. 2000).

assigned to them. Our inquiry into whether given conditions constitute
"punishment" must therefore consider the totality of circumstances within an
institution.

Hubbard, 399 F.3d at 159 (internal quotations and citations omitted).  Thus, the Court of

Appeals, quoting Bell, observed that, "[o]f course, '[e]nsuring security and order at the

institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees,

convicted inmates, or both.'"   Contant v Sabol, No. 11-1806, 2011 WL 2410986 (3d Cir. June

16, 2011), quoting, Bell, at 561, 99 S. Ct. 1861.

In Contant, plaintiff, a pre-trial detainee was placed in segregated disciplinary housing

immediately after he assaulted another inmate.  The Court of Appeals affirmed the dismissal of

plaintiff's complaint.

Notably, however, Contant fails to allege that the defendants had an express intent
to punish him, that placement in the RHU was excessive under the circumstances,
or that the defendants were not acting to ensure institutional security. See Bell,
441 U.S. at 538, 99 S. Ct. 1861 ("Absent a showing of an expressed intent to
punish on the part of detention facility officials, that determination generally will
turn on 'whether an alternative purpose to which  the restriction  may rationally be
connected is assignable for it, and whether it appears excessive in relation to the
alternative purpose assigned  to it.' " (quoting Kennedy v. Mendoza–Martinez,
372 U.S. 144, 168–69, 83 S .Ct. 554, 9 L. Ed. 2d 644 (1963))).

Id. at *1.

Turning to the present case, Plaintiff's Amended Complaint similarly makes clear that the

change in his housing for the four months leading up to his trial and sentencing was solely

related to his self-proclaimed relationship to the "snitch list."  Indeed, Plaintiff's Amended

Complaint confirms that he was moved into segregated housing immediately after he informed

jail personnel that newspaper articles concerning the "snitch list" were *"directed at" him.*[6]   ECF No. 14, p. 1-2, ¶¶ 2-5.

Accepting the allegations of the Amended Complaint as true, Plaintiff was placed in restricted housing immediately after he sent a letter to jail officials indicating his concern about the publicity regarding his connection to the "snitch list."  The potential security issue created is undeniable and patent. As in <u>Contant</u>, ensuring security and order at the institution is a permissible nonpunitive objective clearly met by placing Plaintiff in segregated housing.  In the absence of allegations indicating that officials have exaggerated their interest in maintaining security and operating the institution in manageable fashion, given the evident disruption caused by the generation and circulation of the snitch list referred to by Plaintiff, Plaintiff's Amended Complaint fails to state a substantive due process claim for which relief may be granted.   His placement, under the circumstances alleged in the Amended Complaint, was reasonably related to the interest of the Allegheny County Jail in maintaining security and order.  <u>See</u>, <u>also</u>, <u>Young v. Larkin</u>, 871 F. Supp. 772, 780 (M.D. Pa. 1994), <u>aff'd</u>, 47 F.3d 1163 (3d Cir. 1995) (evidence that detainee presented the "potential for witness intimidation and tampering" supported order to place plaintiff in restricted housing and was "an entirely reasonable nonpunitive response to legitimate security concerns … consistent with the Fourteenth Amendment").

With respect to his procedural due process claim, as Plaintiff's initial Complaint makes clear, Plaintiff was immediately aware of the reasons for his transfer and, through the inmate grievance process, was provided an opportunity to be heard with regard to his challenge to the

---

[6] The Court takes judicial notice of two articles published in the Pittsburgh Post-Gazette on August 26, 2007, which apparently form the basis of Plaintiff's allegations and his acknowledgment that the articles were "directed at" him. The first article describes the list, its connection to the Allegheny County Jail, and police and Jail officials' concern as to the obvious threat to safety the list presented.  The second article specifically refers to the relationship between the "snitch list" and Mollett's underlying criminal trial, discussing the murder of a witness identified on the list who was scheduled to testify against Plaintiff.  <u>See</u>, Gabrielle Banks, <u>Flyer naming snitches alarms police</u>; <u>Four on list may have been killed for Talking</u>, *Pittsburgh Post-Gazette*, August 26, 2007.

propriety of the transfer and consequent visitation issues.   Plaintiff's initial Complaint alleges

that he fully exhausted the administrative remedies available at the Allegheny County Jail

regarding his claims.   ECF No. 8, p.2.   While the review of his claim occurred in a

nonadversarial manner, the review provided comports with the process due a pretrial detainee

who is segregated for administrative purposes and nondisciplinary infractions.   Stevenson v.

Carroll, 495 F.3d 62, 70-71 (3d Cir. 2007).

  In Stevenson, the Court of Appeals, citing Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864,

74 L. Ed. 2d 675 (1983), held that detainees who are transferred into restrictive housing for

administrative/safety related reasons are entitled only to "an explanation of the reason for their

transfer as well as an opportunity to respond."

> Prison officials must provide detainees who are transferred into more restrictive
> housing for administrative purposes only an explanation of the reason for their
> transfer as well as an opportunity to respond. This level of process comports with
> the Supreme Court's holding in Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864, 74
> L. Ed. 2d 675 (1983) that the removal of a sentenced inmate from the general
> prison population and his transfer into administrative segregation requires at least
> a minimal degree of process. The Court explained that "the Due Process Clause
> requires only an informal nonadversary review of evidence ... in order to confine
> an inmate feared to be a threat to institutional security to administrative
> segregation." Id. at 474, 103 S. Ct. 864. This informal nonadversary review is
> satisfied when an inmate receives "some notice of the charges against him and an
> opportunity to present his views to the prison official charged with deciding
> whether to transfer him to administrative segregation." Id. at 476, 103 S. Ct. 864.
> The Court further explained that "[t]he proceeding must occur within a reasonable
> time following an inmate's transfer...." Id. at 476 n. 8, 103 S. Ct. 864.

Stevenson v. Carroll, at 71.   The Court noted that with respect to administrative transfers, "[d]ue

to the unique exigencies of prison management, and in accordance with Hewitt, the minimal

exchange of paperwork our holding will occasion need not occur prior to the transfer of a

detainee." Id.

Plaintiff's Amended Complaint alleges that on August 31, 2007, he was informed by "Lt. Leon" that the reason for his transfer was his suspected involvement in creating the "snitch list." ECF No. 14, p. 2, ¶ 5. Plaintiff further alleges that he immediately availed himself of the grievance procedures in place at the Allegheny County Jail, writing to the Deputy Warden and stating his grievances with regard to his segregation and the limitations placed upon him attendant thereto.  ECF No. 14, p. 2, ¶5.  Accordingly, he had notice of the administrative reasons for his transfer and an opportunity to present his views to the prison official charged with making the decision to transfer him to administrative segregation. The "minimal exchange of paperwork" sufficient to satisfy the holding in <u>Hewitt</u> is alleged in Plaintiff's Complaint and, therefore, Plaintiff fails to state a claim for the violation of his procedural due process rights.

**E.  First Amendment Claim**.

Plaintiff has also asserted a First Amendment claim, alleging that his placement in segregated housing interfered with his ability to visit with one of girlfriends and his mother. However, Plaintiff has failed to set forth a claim upon which relief may be granted as he also alleges that he was permitted hourly visits, and visited with his girlfriend "on and off".  ECF No. 14, p. 3, ¶¶ 14, 15.  Plaintiff does not allege that he was prohibited from corresponding or calling either his mother or his girlfriend; nor does he allege that he was prohibited from visiting with any other members of his family.  Accordingly, Plaintiff does not state a violation of any constitutionally protected right.  He had "alternative means of exercising the  right to communicate with family and friends  because he could receive other visitors and correspond with virtually anyone he wished." <u>Valdez v. Rosenbaum</u>, 302 F.3d at 1048, quoting, <u>Pope v. Hightower</u>, 101 F.3d 1382 (11th Cir. 1996), <u>and</u> <u>citing</u>, <u>Turner v. Safley</u>, 482 U.S. 78, 92, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1986).  Plaintiff therefore merely alleges interference with his ability

18

to contact family at will; which does not constitute a violation of the First Amendment. Accordingly, Plaintiff's First Amendment claim is dismissed.

### F.  Fourth Amendment Claim

To the extent Plaintiff alleges the seizure of non-legal property; Plaintiff does not allege any facts supporting a Fourth Amendment claim against unwarranted search and seizure of his property.  There is no doubt that the protections of the Fourth Amendment with respect to seizures of a prisoner's effects or property do not apply in the prison context.  Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001)("The Hudson court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration.") Hudson v. Palmer, 468 U.S. 517, 538, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)(O'Connor concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects."). Plaintiff's Fourth Amendment claim therefore is dismissed with prejudice.

### G.  Fifth Amendment Claim.

Plaintiff asserts that Defendants violated his Fifth Amendment right to due process when he was transferred to a segregated housing unit and his legal property was confiscated. For this proposition, Plaintiff relies upon Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), which applied the Fifth Amendment due process clause to *federal* pre-trial detainees. However, because Plaintiff was a state pre-trial detainee, his right to due process, while measured by the standard enunciated in Bell, derives from the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (applying Fourteenth Amendment due process clause to state pre-trial detainees).  Because the Fifth Amendment has no application to the facts

averred by Plaintiff, Defendants' Motion to Dismiss Plaintiff's Fifth Amendment claim is granted

and the claim is dismissed with prejudice.

### H.  Official Capacity

Plaintiff fails to aver liability against Defendants in their official capacity in that he has

failed to aver facts sufficient to state a plausible claim of municipal liability. Claims against

Defendants in their official capacity are really claims against the Allegheny County Jail. *Cf.* Will

v. Michigan, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (state official sued in his

official capacity "is no different from a suit against the State itself.")

 In Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018,
56 L. Ed. 2d 611 (1978), the United States Supreme Court held that … a
governmental unit may be liable under § 1983 only when its "policy or custom,
whether made by its lawmakers or by those whose edicts or acts may fairly be
said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The
"official policy" requirement distinguishes acts of the municipality from acts of
employees of the municipality, thereby limiting liability to action for which the
municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the
policy, custom or practice of the municipal defendant that results in the
constitutional violation. Id. at 690–91. A municipal policy is made when a
decision-maker issues an official proclamation or decision. Pembaur v. City of
Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), quoted
in, Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A
custom or practice, however, may consist of a course of conduct so permanent
and widespread that it has the force of law. Andrews, 895 F.2d at 1480. To
establish municipal liability based upon a custom or practice, the plaintiff must
demonstrate that the decision-maker had notice that a constitutional violation
could occur and that the decision-maker acted with deliberate indifference to this
risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally,
Plaintiff must show a causal connection between the custom or policy and the
violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850–51
(3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or
"plausible nexus" between the custom or practice and the alleged constitutional
deprivation. Bielevicz, 915 F.2d at 850–51.

Goodson v. Maggi, No. 08-44, 2011 WL 3236067, *14 (W.D. Pa. July 6, 2011).

Here, Plaintiff has failed to allege facts to state a claim for municipal liability that is plausible on its face. Plaintiff has failed to allege facts that Defendants, in their official capacity as the warden or officers at the Allegheny County Jail, established a policy or custom of unconstitutionally depriving pre-trial detainees of due process when transferring them to segregated housing based upon well-founded security issues, or interfering with a pre-trial detainees right to counsel, or interfering with family visitation.   Therefore, Plaintiff's claims against Defendants in their official capacity should be dismissed with prejudice.

## I.   Plaintiff's Request for Injunctive and Declaratory Relief Is Moot

Defendants have moved to dismiss Plaintiff's claims for injunctive and declaratory relief as moot for, as Plaintiff concedes, he is no longer incarcerated at the Allegheny County Jail. ECF No. 38, p. 13.   The Court agrees with the Defendants that the Plaintiff's removal from the Allegheny County Jail renders his claims for injunctive and declaratory relief moot, and these claims are dismissed.

In general, an inmate-plaintiff's transfer to another prison, or his release, moots a request for declaratory or injunctive relief. See, e.g., Bronson v. Overton, Civ. A. No. 08-52E, 2010 U.S. Dist. LEXIS 60003, at *1 n. 1 (E.D. Pa. May 27, 2010); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa.1998) ("Fortes' transfer to another institution  moots any claims for injunctive or declaratory relief").   Additionally, declaratory relief cases address present/future harms, not past harm. "To satisfy the standing and 'case and controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'"  Martin v. Keitel, 205 F. App'x 925. 928 (3d

Cir. 2006) (affirming dismissal of declaratory judgment action seeking "a declaration that defendants violated … rights in the past" as no longer justiciable).

Given Plaintiff's sentence for life imprisonment for the murder of Corporal Pokorny, Plaintiff is highly unlikely to return to the Allegheny County Jail as a pre-trial detainee in the foreseeable future.  His Amended Complaint does not allege that he will be subjected to the alleged harm as a pre-trial detainee in the future.  Accordingly, even if Defendants violated Plaintiff's rights in the past as he alleges, he is not entitled to a declaration to that effect. Plaintiff's claims for injunctive and declaratory relief are dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Eighth Amendment claim alleging the denial of medical treatment for an undisclosed condition is barred by the applicable statute of limitations. Plaintiff's claims regarding the denial of unlimited visitation with counsel and contact with witnesses, as well as the destruction of legal documents and property are barred by application of Heck v. Humphrey, 512 U.S. 477 (1994).  Additionally, Plaintiff's First Amendment claim and Fourteenth Amendment Due Process claims arising out of his placement in segregated housing after disclosing his relationship to the "jailhouse snitch list" are dismissed for failure to state a claim upon which relief may be granted.  Plaintiff has also failed to state a claim for a violation

of the Fourth or Fifth Amendment and has failed to allege facts sufficient to entitle him to

injunctive or declaratory relief.  Accordingly, the Motion to Dismiss (ECF No. 34) is granted.

An appropriate Order follows.


November 8, 2011

cc:     Leslie Mollett
        FX-5452
        SCI Frackville
        1111 Altamont Blvd.
        Frackville, PA 17931

        All counsel of record via CM/ECF